UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JAIRO AGUIRRE,

                    Plaintiff,

          - against -

CITY OF NEW YORK, P.O. SHERLON J.
CROMWELL, P.O. TRAVIS ALEXANDER,
and SERGEANT DANIEL CASELLA,

                   Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CV-6043 (PKC)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Jairo Aguirre ("Plaintiff" or "Aguirre") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant New York City Police Department ("NYPD") Officers Sherlon Cromwell ("Cromwell") and Travis Alexander ("Alexander"), NYPD Sergeant Daniel Casella ("Sergeant Casella") (collectively, the "Defendant Officers"), and the City of New York (the "City"), based on Plaintiff's arrest on February 17, 2015. In his Second Amended Complaint ("SAC"),[1] Plaintiff asserted the following five causes of action against all three Defendant Officers: (1) false arrest; (2) unlawful search; (3) failure to intervene; (4) violation of the right to a fair trial; and (5) malicious prosecution. Plaintiff also asserted a municipal liability claim against the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Before the Court is Defendants' motion for judgment on the pleadings as to Plaintiff's municipal liability claim against the City and motion for partial summary judgment seeking dismissal of: (1) the malicious prosecution, violation of a right to a fair trial, and failure to

_____

[1] The Court refers to the pleading filed on the docket on June 3, 2016 (Dkt. 21). On the docket sheet, the pleading is described as the "Second Amended Complaint," but the document is incorrectly titled, "First Amended Complaint."

intervene claims against Alexander; (2) the failure to intervene claim against Cromwell; and (3) all claims against Sergeant Casella. In his Opposition to Defendants' motion, Plaintiff withdrew all of his claims against Sergeant Casella.

For the reasons stated below, Defendants' remaining motions as to the City, Alexander and Cromwell are granted in part and denied in part.

## BACKGROUND

### I. Facts

On the night of February 17, 2015, Plaintiff was driving his mother's car, looking for a parking spot when he was stopped by Officers Cromwell and Alexander, members of a NYPD Brooklyn South Anti-Crime Team, who were patrolling the area. (Pl. 56.1 ¶¶ 1–4.)[2] Once Plaintiff had pulled over, Cromwell approached the driver's side of Plaintiff's car and Alexander approached the passenger side of the vehicle. (Pl. 56.1 ¶¶ 5–7.) After checking Plaintiff's license and registration, Cromwell instructed Plaintiff to step out of the car. (Iwuh Decl. Ex. 2 ("Cromwell Tr.") at 22:5–12, 22:23–23:11; 28:6–8.) Cromwell testified that he gave this instruction after observing a bag of marijuana on the armrest of the car. (*Id.* at 27:20–28:12.) Alexander, however, testified that Cromwell told him that Plaintiff was ordered out of the vehicle because Cromwell smelled marijuana from the car. (Pl. 56.1 ¶ 44; Iwuh Decl. Ex. 3 ("Alexander Tr.") at 28:18–29:24.)

Plaintiff asked Cromwell the reason for having to step out of the car; Cromwell either ignored the question or told Plaintiff that an explanation would be given later. (Pl. 56.1 ¶¶ 8, 10.)

---

[2] Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that the Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court cites directly to the underlying document.

Plaintiff complied by stepping out of the car, and Cromwell directed Plaintiff to go to the rear of Plaintiff's car. (*Id.* ¶¶ 10–11.) Alexander went to the rear of the car and remained there with Plaintiff. (*Id.* ¶ 12.) Cromwell then searched the car by ripping up the carpet and looking through the glove compartment and armrest. (*Id.* ¶ 13.) The parties dispute whether anything was found during this search. While Plaintiff claims that there were no drugs in the car, Defendants claim that Cromwell recovered a substance that was later determined to be marijuana. (*Compare id.*, *with id.* at ¶ 21.) Specifically, Cromwell testified that he found multiple bags of marijuana in the car's cup holder, on the floor of the car, and in the center console armrest. (Cromwell Tr. at 30–32:9.) Once Cromwell was done searching the inside of the car, he walked over to Plaintiff, who was still by the trunk, and asked Plaintiff whether he knew anything about guns. (Iwuh Decl. Ex. 1 ("Aguirre Tr.") at 73:15–16.) Cromwell and Alexander, together, arrested and handcuffed Plaintiff. (Pl. 56.1 ¶¶ 15–16; Alexander Tr. at 10:20–22, 30:7–10.)[3] They then drove Plaintiff to the 60th Precinct. (Pl. 56.1 ¶ 19.) While en route, Cromwell again asked Plaintiff if he knew anyone who owned a gun; Plaintiff said he had no such information. (Aguirre Tr. at 76:10–77:4.) Later on, Cromwell and Alexander personally drove Plaintiff from the precinct to Central Booking. (*Id.* at 83:20–25.) On the way there, they gave Plaintiff a piece of paper with Cromwell's phone number written on it and told Plaintiff to call if he had information about anyone with a gun. (Pl. 56.1 ¶¶ 45–46.) Cromwell allegedly told Plaintiff that Plaintiff would get paid if he gave them information; Plaintiff again denied knowing anyone with a gun. (*Id.* ¶ 47.)

While the parties dispute whether a field test was done of the items Cromwell claims to have recovered from Plaintiff's car, Defendants allege that Cromwell vouchered twenty-eight bags

---

[3] The parties characterize the arrest as Cromwell handcuffing Plaintiff and Alexander "helping" Cromwell. (Pl. 56.1 ¶ 17.)

of marijuana and two bags of hashish as arrest evidence for Plaintiff. (Pl. 56.1 ¶ 21 (Plaintiff's allegation that no substance was recovered in relation to his arrest and that the criminal complaint did not state that a field test was done); *id.* ¶ 22 (Defendants' allegations about Cromwell's vouchering of arrest evidence).) Cromwell generated paperwork related to Plaintiff's arrest, including a complaint report, a field test report, and property invoices. The parties dispute whether Cromwell or Alexander was responsible for generating the arrest report. (*See id.* ¶¶ 29–31 (disputing Defendants' assertion that Cromwell generated the arrest report and that Alexander "assisted" Cromwell by manually entering data into the NYPD online arrest report form).) Sergeant Casella, Cromwell and Alexander's supervisor, verified Plaintiff's arrest and signed Cromwell's field test report. (*Id.* ¶ 25.) Plaintiff spent 34 hours and 22 minutes in custody before he was released. (Pl. 56.1 ¶ 48; Iwuh Decl. Ex. 10 (Arraignment Status Sheet); Iwuh Decl. Ex. 7 (Joint Status Report).)

Cromwell faxed the completed police paperwork to the Kings County District Attorney's Office ("DA's Office") and spoke to a paralegal there, by telephone, regarding Plaintiff's arrest. (Pl. 56.1 ¶ 26.) Specifically, according to the Complaint Room Screening Sheet, Cromwell informed the DA's Office that his search of Plaintiff's car, conducted *at the precinct*, yielded twenty-six bags of marijuana and two bags of hashish. (Dkt. 43-12, Iwuh Decl. Ex. 8 (Complaint Room Screening Sheet); *see also* Cromwell Tr. at 79:23–80:11 (testifying that the Screening Sheet accurately reflected the information he gave to the DA's Office).) Based on his/her conversation with Cromwell, the paralegal drafted, and signed, as deponent, a criminal complaint charging Plaintiff with several different offenses. (Pl. 56.1 ¶ 27.) The criminal complaint named only Cromwell as a source of information concerning Plaintiff's arrest. (*Id.*) Neither Cromwell nor Alexander signed the criminal complaint. (Speight Decl. Ex. M (Crim. Compl.).) Even though

the DA's Office generated a verification form for Cromwell to attest to, the form was never signed by anyone, and Cromwell testified that he "didn't remember seeing [the form] at all." (Pl. 56. 1 ¶ 31.)[4]

Plaintiff was charged with Criminal Possession of Marijuana (N.Y. PL 221.10), Unlawful Possession of Marijuana (N.Y. PL 221.05), and traffic violation (TR 4-08). (Pl. 56.1 ¶ 49; Iwuh Decl. Ex. 11 (Cert. of Disp.).) After Plaintiff had made court appearances and rejected plea offers, on May 20, 2015, the DA's Office moved to dismiss the charges against Plaintiff for insufficient evidence. (Pl. 56.1 ¶ 33; Speight Decl. Ex. O (Cert. of Disp.); Iwuh Decl. Ex. 6 (Record of criminal court's granting of DA's Mot. to Dismiss Pl.'s criminal charge for insufficient evidence); Aguirre Tr. at 92:1–9, 106:1–6.) The charges were dismissed and sealed. (Pl. 56.1 ¶ 34; Iwuh Decl. Ex. 11 (Cert. of Disp.).)

## II.     Procedural History

Plaintiff filed the instant lawsuit on October 21, 2015. (Dkt. 1.) Defendants served their answer on December 28, 2015. (Dkt. 8.) Plaintiff then filed an amended complaint on January 20, 2016. (Dkt. 12.) Defendants served their answer to the amended complaint on February 9, 2016. (Dkt. 17.) Plaintiff filed a second amended complaint on June 3, 2016, and Defendants served their answer to that complaint on June 13, 2016. (Dkts. 21, 22.) On February 21, 2017, Defendants' motion for judgment on the pleadings and partial summary judgment was fully briefed.

---

[4] The verification form to which Cromwell was supposed to attest included a statement that he had "read the accusatory instrument filed in this action [and that] [t]he facts in the instrument stated to be on information furnished by [Cromwell were] true to [his] personal knowledge." (Pl. 56.1 ¶ 30.)

**DISCUSSION**

**I.    Defendants' Motion for Judgment on the Pleadings as to *Monell* Claim**

Defendants have moved for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c) with respect to Plaintiff's *Monell* claim against the City.[5]  "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Martin v. Cnty. of Nassau*, 692 F. Supp. 2d 282, 288 (E.D.N.Y. 2010) (quoting *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006)).  Therefore, the Court considers whether Plaintiff's Second Amended Complaint contains enough allegations of fact to state a plausible claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the Court "'must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions', and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009)).

A municipality may be liable under Section 1983 if a municipal "policy or custom" caused a "deprivation of rights protected by the Constitution."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  A municipality may not be held liable under Section 1983 on the basis of *respondeat superior.  Monell*, 436 U.S. at 694.  "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a

---

[5] While Defendants also moved to dismiss Plaintiff's *Monell* claim pursuant to Rule 12(d), in the event the Court considers extrinsic material that is not included in Plaintiff's SAC, the Court finds that it need not and should not treat the motion as a summary judgment motion.  Although Rule 12(d) permits a court to convert a Rule 12(b)(6) motion into a motion for summary judgment, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *see also Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 491 (S.D.N.Y. 2013) (declining to convert a Rule 12(c) motion into a summary judgment because plaintiff had not yet had the opportunity to take discovery).

plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Johnson v. N.Y. City Police Dep't*, 651 F. App'x 58, 60 (2d Cir. 2016) (citation, internal quotation marks omitted); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.").

The first element of a *Monell* claim, the existence of an official policy or custom, may be established by any of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train[,] [discipline,] or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff." *Moran v. Cnty. of Suffolk*, No. 11–cv–3704, 2015 WL 1321685, at *9 (E.D.N.Y. Mar. 24, 2015) (citations omitted).

Furthermore, "[a]bsent a showing of a causal link between an official policy or custom and the plaintiff['s] injury, *Monell* prohibits a finding of liability against the city." *Cowan v. City of Mount Vernon*, No. 14–cv–8871, 2017 WL 1169667, at *7 (S.D.N.Y. Mar. 28, 2017) (alterations omitted) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *Batista*, 702 F.2d at 397 ("The mere invocation of the pattern or plan will not suffice without [a] causal link." (citation, internal quotation marks, and alterations omitted)).  At this stage, of course, Plaintiff need not prove these elements, but he must allege sufficient facts to state a plausible claim for relief.  *See*

*Santos v. N.Y. City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) ("[A Complaint] must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015) ("Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement . . . ." (citations, internal quotation marks and alterations omitted)).

Plaintiff appears to base his *Monell* claim on an alleged "custom" by the City to engage in various forms of unlawful conduct, including false arrests, illegal searches, and fabrication of evidence, and on the City's alleged failure to supervise and discipline its officers.[6] (*See* SAC ¶¶ 92–95, 101–02 (custom); *id.* ¶¶ 96–100, 103 (failure to supervise or discipline).) For the reasons stated below, the SAC, which mostly contains boilerplate allegations of unconstitutional policies and custom, lacks sufficient factual allegations to raise a plausible *Monell* claim.

### A. Custom

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. 397, 404 (1997); *see also Miller v. Cnty. of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) (noting that a plaintiff may establish municipal liability by demonstrating that a policy maker "indirectly caused the misconduct of a subordinate municipal employee by

_____

[6] Plaintiff does not allege that the City implemented a formally recognized policy, nor does he allege that any of the Defendant Officers, who allegedly caused Plaintiff's injury, are final policymakers for the City. Thus, of the four ways in which a plaintiff could allege existence of custom or policy in pleading a *Monell* claim, the Court interprets the SAC to implicate only the third and fourth categories.

acquiescing in a longstanding practice or custom which may fairly be said to represent official policy").

The SAC alleges a myriad of unlawful customs or policies by the City: (a) "wrongfully arresting individuals on the pretext that they [a]re/were involved in illegal vice transactions; (b) manufacturing evidence against individuals allegedly involved in illegal vice transactions; (c) unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband; (d) arresting innocent persons in order to meet 'productivity' goals (i.e. arrest quotas); and (e) wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so." (SAC ¶ 95.) Plaintiff also alleges that there is a custom of falsifying evidence by arresting officers. (*See id.* ¶ 102.) Allegations (a), (b), and (e) require little discussion because, as Defendants pointed out, nothing in the SAC suggests that Plaintiff was arrested or prosecuted for "vice transactions," or was brutalized and subjected to excessive force; thus, even if these allegations of a "custom" were sufficiently alleged, there could be no causal link between them and Plaintiff's arrest. The Court, therefore, examines whether the facts alleged in the SAC are sufficient to plausibly infer that there is a widespread custom of (1) unlawfully searching detainees or their property in the absence of any reasonable suspicion that the detainees were concealing weapons or contraband, (2) fabricating evidence—more specifically, planting drugs on innocent arrestees—and (3) wrongfully arresting people to fulfill arrest quotas.

Setting aside many of the conclusory allegations in the SAC,[7] Plaintiff alleges that "the unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long history of civil actions in state and federal courts." (*Id.*

---

[7] *See, e.g.*, SAC ¶¶ 31–36, 39–40, 94.

¶ 37.)  As support for this statement, the SAC quotes the following portion of Judge Weinstein's

decision in *Colon v. City of N.Y.*, Nos. 09–cv–8, 09–cv–9, 2009 WL 4263362, at *2 (E.D.N.Y.

Nov. 30, 2009):

> Informal inquiry by the court and among the judges of this court, as well as
> knowledge of cases in other federal and state courts, has revealed anecdotal
> evidence of repeated, widespread falsification by arresting police officers of the
> New York City Police Department. . . . [T]here is some evidence of an attitude
> among officers that is sufficiently widespread to constitute a custom or policy by
> the city approving illegal conduct of [fabrication of evidence].[8]

(SAC ¶ 38; *see also id.* ¶ 102 (repeating discussion of the decision).  Additionally, in support of

his *Monell* claims alleging a widespread unlawful custom, Plaintiff offers material from Exhibit

13, which he attached to his opposition brief.  However, none of the facts in Exhibit 13 were

explicitly asserted in Plaintiff's SAC, and thus it would be improper for the Court to consider them

for the purpose of a motion to dismiss.[9]  Nevertheless, for the reasons stated below, even if the

Court were to "relax" adherence to procedural rules and consider the SAC to be "amended" to

incorporate Exhibit 13, Plaintiff still fails to state a plausible *Monell* claim.

---

[8] Notably, this portion of Judge Weinstein's decision is *dicta*, in that he ultimately ruled that the plaintiffs "nudged their claims across the line from conceivable to plausible," because "there [were] sufficient issues of fact to warrant further proceedings under *Monell*."  *Colon*, 2009 WL 4263362, at *2.

[9] A court's analysis at this stage "is limited to information contained within the four corners of the complaint" and if "material outside the pleadings is presented in response to a motion to dismiss, the court must either exclude the additional information and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . ."  *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 398–99 (S.D.N.Y. 2007); *see also Raffaele v. City of N.Y.*, 144 F. Supp. 3d 365, 373 (E.D.N.Y. 2015) (declining to consider a CCRB report submitted by plaintiff because the amended complaint did not attach the report, the report was not incorporated by reference into the amended complaint, and the amended complaint did not rely on the "terms and effect" of the report).  Thus, Plaintiff should have sought to amend his complaint to incorporate the CCRB Report upon which he now relies.  However, as explained above, even if the Court were to consider Exhibit 13 for purposes of the motion to dismiss, it would not save his *Monell* claim.

Specifically, Plaintiff argues that a widespread unlawful custom of police misconduct by the City can be inferred from (1) an excerpt of a New York City Civilian Complaint Review Board ("CCRB") report on Improper Entries and Searches by the NYPD from January 2010 to October 2015; (2) an excerpt from a 1994 report by the New York City Commission about allegations of police corruption, perjury, and falsification of documents; (3) an article entitled "Afterword: The Neglected Mollen Commission's Finding on Perjury, Manufactured Facts, and [F]alsification" written by Harry G. Levine, a sociology professor at Queens College, City University of New York; (4) a Huffington Post article that discusses a former New York City narcotics detective's court testimony about the NYPD's planting of drugs on innocent people to boost arrest numbers; and (5) articles about a conviction of a Brooklyn South narcotics detective who was found guilty of planting drugs on innocent people. (*See* Pl. Br. at 13–16.)

As other courts in this Circuit have found in similar Section 1983 actions, Plaintiff's reliance on reports and articles regarding misconduct by NYPD officers are "inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to *Plaintiff's* alleged violation." *Peterec v. City of N.Y.*, No. 14–cv–309, 2015 WL 1027367, at *7 (S.D.N.Y. Mar. 6, 2015) (emphasis added) (rejecting plaintiff's argument that two suits, which were unrelated to plaintiff's and one of which was a class action suit regarding the City's "stop and frisk" policy, showed "a clear-cut pattern of abuse, that is unconstitutional and a policy and custom of the City of New York that [plaintiff] fell victim to"); *see also Hickey v. City of N.Y.*, No. 01–cv–6506, 2004 WL 2724079, at *21 (S.D.N.Y. Nov. 29, 2004) (explaining that court cannot "take judicial notice of a number of highly-publicized episodes of alleged police abuse . . . and extrapolate from those assumptions an effect on the present episode"), *aff'd*, 173 F. App'x 893

(2d Cir. 2006); *Tchatat v. City of N.Y.*, No. 14–cv–2385, 2015 WL 5091197, at *11 (S.D.N.Y. Aug. 28, 2015).

The portion of the CCRB report offered in support of Plaintiff's *Monell* claim is inadequate to plausibly suggest that there is a custom of planting drugs on arrestees, conducting illegal searches, and arresting people to meet quotas. The portion of the report discussed by Plaintiff boils down to the fact that sixteen officers, over the course of five years, were referred by the CCRB to the NYPD's Internal Affairs Bureau ("IAB") for further investigation of *potential* false official statements made in the context of improper entry or search or failure to show a warrant. (Pl. Exhibit 13 at 77.)[10] Such facts do not plausibly suggest a "practice . . . so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404. Similarly, the other material in Plaintiff's Exhibit 13, such as a two-decades-old report about concerns of perjury and document falsification by the NYPD and news articles about some criminal convictions of police officers and police misconduct—all unrelated to the instant case—are insufficient for Plaintiff to allege a plausible *Monell* claim. *See Pluma v. City of N.Y.*, No. 13–cv–2017, 2015 WL 1623828, at *11 (S.D.N.Y. Mar. 31, 2015) (finding plaintiff's discussion of instances of inappropriate pepper spray deployment described in the CCRB report  inadequate for plausibly alleging deliberate indifference by the City because such a "dissimilar incident[] occurring over the course of more than a decade is too sparse to put the City on notice" of the need for additional training of officers);

---

[10] The relevant section of the report states that "[i]n the 180 complaints containing a substantiated allegation of *improper entry and/or search or failure to show a warrant*, 14 officers were referred by the [CCRB] to IAB for further investigation of a potential false official statement. [The CCRB also noted two other instances of potential false official statements that did not involve improper entry or search of premises.] . . . [O]fficers in these cases minimized or denied entering or searching premises as a way to avoid involvement in the misconduct. Other evidence . . . provided the CCRB with a sufficient basis to note a potential false official statement by the officer." (Iwuh Decl. Ex. 13 at 77 (emphasis added).)

*see also Jones v. Town of E. Haven*, 691 F.3d, 72, 85 (2d Cir. 2012) (holding that two or three instances of police misconduct "fell far short of showing a policy, custom, or usage of officers to abuse the rights of black people, and far short of showing abusive conduct among officers so persistent that it must have been known to supervisory authorities"). While Judge Weinstein opined, in *dicta*, in 2009 that there was evidence of a widespread custom of the City approving the fabrication of evidence by NPYD officers, *see Colon*, 2009 WL 4263362, at *2, the Court respectfully declines to rely on this conclusion reached in the context of a particular case at least six years before the incident at issue in this case. In any event, even accepting this finding, there is no evidence indicating that the alleged fabrication of evidence in this case was caused by this custom.

### B.     Failure to Supervise and Discipline

Failure to "supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007). In addition, "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights [can] give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Batista*, 702 F.2d at 397; *see also Boddie v. City of N.Y.*, No. 15–cv–4275, 2016 WL 1466555, at *3 (S.D.N.Y. Apr. 13, 2016) (citing *Batista*). When pleading a claim of municipal liability under a theory of failure to supervise or discipline, a plaintiff must allege that the municipal policymaker acted with "deliberate indifference." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (setting out the "deliberate indifference" standard in a failure to train case); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("[O]nly where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, [can] the municipality or official . . . be found deliberately indifferent to the need." (citing

13

*City of Canton*, 489 U.S. at 390)); *Pipitone v. City of N.Y.*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) (applying the "deliberate indifference" standard to failure to supervise or discipline claims (citing *City of Canton*, 489 U.S. at 388–89)).

Plaintiff urges the Court to infer the City's deliberate indifference based on conclusory allegations about the flawed process by which complaints filed with the CCRB are handled. Plaintiff claims that the review and investigation processes by the CCRB and the NYPD Commissioner are designed to yield inadequate disciplining of police misconduct. For example, Plaintiff alleges that the City has failed to adequately discipline police officers for fabricating evidence and conducting unlawful searches. (*See* SAC ¶¶ 96–101.) Plaintiff also claims that the City and its police commissioner ignore the numerous complaints filed with the CCRB and "the judicial rulings suppressing evidence and finding officers incredible as a matter of law"; that there are "well-documented failures of the [CCRB] . . . to substantiate obviously meritorious citizen complaints"; that "the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense"; that the "CCRB has no enforcement mechanisms once making a finding against an officer"; and that the NYPD fails to adequately discipline officers for misconduct even after receiving a substantiated complaint by the CCRB. (SAC ¶¶ 96–98.) Furthermore, Plaintiff alleges that the NYPD Department Advocate, the division responsible for following up on substantiated CCRB charges, is understaffed and under-utilized, and that even when the Department Advocate "proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions." (SAC ¶ 98.)

Plaintiff alleges no facts to substantiate these conclusory assertions. The Court, therefore, need not, and does not, accept them as true. *See Milan v. Wetheimer*, 808 F.3d 961, 963 (2d Cir.

2015) ("We accept as true all facts described in the complaint but need not accept 'conclusory allegations or legal conclusions couched as factual allegations.'" (alteration omitted) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014))).  For example, although Plaintiff alleges that policy and custom can be inferred from the CCRB's and the NYPD Commissioner's history of "[ignoring] numerous complaints filed with the CCRB," the SAC does not allege any other facts regarding the number of filed complaints that the CCRB or NYPC Commissioner ignored.  Nor does the SAC allege any particular instances of "well-documented" failures of the CCRB to substantiate "obviously" meritorious citizen complaints.  Additionally, even assuming it to be true that the Department Advocate is "understaffed" or that the police commissioner has the authority to reduce the discipline against an officer found to have committed misconduct, those allegations alone are far from sufficient to allege a plausible *Monell* claim based on a theory that the City fails to properly discipline police officers.  Thus, the allegations in the SAC are "naked assertion[s] devoid of further factual enhancement" and are insufficient to state a *Monell* claim.  *See Iqbal*, 556 U.S. at 678 (alteration in original); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 536 (S.D.N.Y. 2012) (explaining that plaintiff's claims that police officers investigating incidents "systematically fail to credit testimony by non-police officer witnesses and . . . fail to include in their reports relevant factual information [that would] tend to contradict the statements of the police officer involved" were "naked assertions" given the absence of any facts substantiating the allegations).  In short, Plaintiff has not alleged enough facts to plausibly raise an inference that any "failure to discipline" was a result of "a deliberate or conscious choice by a municipality."  *See Mahan v. City of N.Y.*, No. 00-cv-6645, 2005 WL 1677524, at *3 (E.D.N.Y. July 19, 2005) (quoting *City of Canton*, 489 U.S. at 389).

Furthermore, as previously discussed *supra*, Plaintiff has not adequately alleged facts in support of his assertion that the City's deliberate indifference and failure to discipline and supervise the Defendant Officers were the "moving force" behind Plaintiff's constitutional injuries. *See Peterec*, 2015 WL 1027367, at *7; *Hickey*, 2004 WL 2724079, at *21. In fact, based on the allegations in the SAC, it is ambiguous whether the Defendant Officers avoided any type of disciplinary proceedings. (*See* SAC ¶ 98 ("[I]n the extraordinarily rare event, *such as the matter at bar*, that the CCRB substantiates a complaint and the Department Advocates proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer . . . .").) Not only is it unclear, based on the SAC, whether the City actually failed to discipline the Defendant Officers, but, even assuming that the Defendant Officers were not disciplined, the SAC does not include sufficient facts to plausibly raise an inference that there was a nexus between any of the purported flaws in the City's disciplinary system for police officers, the failure to discipline Defendants, and Plaintiff's arrest and prosecution. "[T]he stringent causation and culpability requirements set out [by the Supreme Court in *City of Canton*] have been applied to a broad range of supervisory liability claims, including claims for failure to supervise and failure to discipline." *Triano*, 895 F. Supp. 2d at 534 (citations and internal quotation marks omitted).

## II. Defendants' Summary Judgment Motion as to Defendants Alexander and Cromwell

Defendants move for partial summary judgment as to Plaintiff's claims of malicious prosecution, fabrication of evidence, and failure to intervene against Alexander, and the claim of failure to intervene against Cromwell.

### A. Summary Judgment Standard

A defendant seeking summary judgment must establish that "there is no genuine dispute as to any material fact," and that they are thus "entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "Material" facts are facts that "might affect the outcome of the suit under the governing law." *Roberts v. Univ. of Rochester*, 573 F. App'x 29, 31 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 32 (quoting *Anderson*, 477 U.S. at 248). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once a defendant has met his initial burden, the plaintiff must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323–24 (internal quotation marks omitted). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Anderson*, 477 U.S. at 255).

The Court's inquiry upon summary judgment is "determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *see also id.* at 251–52 ("In essence, though, the inquiry . . . [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B.    Malicious Prosecution

Plaintiff asserts a federal malicious prosecution claim against both Cromwell and Alexander, and as previously noted, Defendants move for summary judgment only as to the claim against Alexander.  To prevail on a Section 1983 claim of malicious prosecution, a plaintiff must prove the four elements of malicious prosecution under New York law—"(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions"—as well as a violation of the plaintiff's rights under the Fourth Amendment. *Manganiello v. City of N.Y.*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations and quotation marks omitted); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116–117 (2d Cir. 1995) (relying in part on common law and New York State malicious prosecution law in analyzing Section 1983 malicious prosecution claim).

Defendants' only basis for seeking summary judgment on Plaintiff's malicious prosecution claim against Alexander is that the first element is not met because Alexander was not personally involved in initiating or continuing criminal proceedings against Plaintiff.[11]  To initiate or continue a criminal proceeding, "a defendant must do more than report the crime or give testimony.  He must 'play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'"  *Manganiello*, 612 F.3d at 163 (alteration omitted) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000)).  An active role in prosecution

---

[11] Notably, Defendants do not assert, as a matter of law, that Plaintiff will not be able to prove malice on the part of Alexander or Cromwell at trial.  "Actual malice" can be demonstrated "by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff."  *Manganiello*, 612 F.3d at 163 (quoting *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)); *see also id.* ("[A] lack of probable cause generally creates an inference of malice." (quoting *Boyd v. City of N.Y.*, 336 F.3d 72, 78 (2d Cir. 2003))).

is inferred when a defendant had the plaintiff arraigned, filled out a complaining and corroborating affidavit, or signed a felony complaint. *See Cameron v. City of N.Y.*, 598 F.3d 50, 63 (2d Cir. 2010) (noting that a police officer can initiate prosecution by filing charges or other accusatory instruments); *see also Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014). Additionally, a defendant initiates a prosecution "by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor." *Costello*, 20 F. Supp. 3d at 415; *see also Brome v. City of N.Y.*, No. 02–cv–7184, 2004 WL 502645, at *5 (S.D.N.Y. Mar. 15, 2004) ("[A]lthough there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution when [he] creates false information likely to influence a jury's decision and forwards that information to prosecutors." (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)) (internal quotation marks omitted)); *Webster v. City of N.Y.*, 333 F. Supp. 2d 184, 198–99 (S.D.N.Y. 2004) (collecting cases and noting that police officers could be held liable for malicious prosecution if they provided false information to prosecutors).

Here, while Cromwell filled out the complaint report, Alexander entered data into the NYPD online arrest report form. (Cromwell Tr. at 78:8–13; Alexander Tr. at 32:22–33:8; *see also* Iwuh Decl. Ex. 17 ("Arrest Report"); Speight Decl. Ex. H ("Complaint Report").) Both the arrest and complaint reports noted that Plaintiff possessed controlled substances—a fact that Plaintiff contends to be false. (*See* Arrest Report; Complaint Report.) Cromwell faxed the completed police paperwork to the DA's Office. (Pl. 56.1 ¶ 26.) Although there is no evidence that Alexander signed the criminal complaint or completed any corroborating affidavits, given that Alexander completed an arrest report in furtherance of Plaintiff's arrest, which allegedly contained false

information that was "likely to influence a jury's decision," the Court denies Defendants' summary judgment motion as to Plaintiff's malicious prosecution claim against Alexander. *See Ross v. Township of Woodbridge*, No. 09–cv–1533, 2010 WL 1076275, at *4 (D.N.J. Mar. 23, 2010) (denying summary judgment as to malicious prosecution claim where defendant officer completed an arrest report, even though he did not fill out the complaint or testify at a grand jury proceeding or before a judge in any proceeding related to plaintiff's criminal case); *see also Brown v. Mazurski*, No. 99–cv–2194, 2000 WL 1745242, at *4 (N.D. Ill. Nov. 28, 2000) (finding "sufficient evidence by which the trier of fact could conclude that knowing misstatements by [defendant officer] led to the initiation of criminal proceedings against [plaintiff]" where defendant signed the arrest report and criminal complaint); *accord Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.").

### C.   Violation of a Right to a Fair Trial Claim[12]

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti*, 124 F.3d at 130; *see also Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015) (citing *Ricciuti*); *Zahrey*, 221 F.3d at 355 ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.").[13] "Like a prosecutor's knowing use of false evidence to obtain a tainted

---

[12] The terms "fair trial claim" and "fabrication of evidence claim" are used interchangeably.

[13] "While the malicious prosecution claim under § 1983 protects an individual's liberty under the Fourth Amendment, *see Albright v. Oliver*, 510 U.S. 266, 274–75 (1994), the claim of

conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 275 (2d Cir. 2016) (quoting *Ricciuti*, 124 F.3d at 275).

To succeed on a Section 1983 claim alleging violation of a right to a fair trial, a plaintiff must prove that "an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Id.* at 279 (citing *Ricciuti*, 124 F.3d at 130 and *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)). Defendants move for summary judgment on Plaintiff's fair trial claim arguing that Plaintiff cannot establish that Alexander forwarded fabricated information to prosecutors. Defendants also argue that because some courts have found that a "§ 1983 claim for denial of the right to a fair trial requires that a trial have actually been conducted" and no trial ever occurred in Plaintiff's case, the claim should be dismissed. As the Court has already addressed the issue of Alexander's personal involvement in forwarding false information to the prosecutor in its discussion of the malicious prosecution claim, the Court turns to Defendants' argument that Plaintiff must have gone to trial to assert a fair trial claim.

Although not fully articulated as such in their brief, Defendants' argument relies on the third element of the claim, *i.e.*, the requirement that the fabricated information was one that was "likely to influence a jury's verdict." The logic, presumably, is that because there was no trial,

---

denial of the right to a fair trial finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and the Fourteenth Amendments. *See Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) . . . ." *Pizarro v. City of N.Y.*, No. 14–cv–507, 2015 WL 5719678, at * 6 (E.D.N.Y. Sept. 29, 2015).

information—even if it were fabricated—could not have influenced a jury's verdict and thus the information was *not* "likely to influence a jury's decision."

There is a disagreement in this Circuit on this issue. Although some district courts, as Defendants have indicated, find it necessary that a plaintiff has gone to trial in order to sustain a fair trial claim, this Court has previously found that "[a] plaintiff need not have gone to full trial on the merits in order to have an actionable Section 1983 claim based on the denial of a fair trial." *Li v. City of N.Y.*, No. 15–cv–1599 (PKC), 2017 WL 1208422, at *27 (E.D.N.Y. Mar. 31, 2017) (citation and quotations omitted).[14] Notably, in *Ricciuti*, the Second Circuit reversed a district court's dismissal of the plaintiff's fair trial claim—even though all criminal charges were dismissed pre-trial. 124 F.3d at 127, 130. The Second Circuit explained, in *Ricciuti*, that when an

---

[14] *See also Marom v. City of N.Y.*, No. 15–cv–2017, 2016 WL 916424, at *9 (S.D.N.Y. Mar. 7, 2016); *Long v. N.Y. City*, No. 14–cv–9908, 2016 WL 4203545, at *3 (S.D.N.Y. Aug. 8, 2016); *Nnodimele v. Derienzo*, No. 13–cv–34611, 2016 WL 337751, at *11 (E.D.N.Y. Jan. 27, 2016); *Jones v. City of N.Y.*, No. 12–cv–3658, 2013 WL 6047567, at *9 (E.D.N.Y. Nov. 14, 2013), *vacated and remanded on other grounds*, 603 F. App'x 13 (2d Cir. 2015); *Horvath v. City of N.Y.*, No. 12–cv–6005, 2015 WL 1757759, at *6 (E.D.N.Y. Apr. 17, 2015); *Salazar v. City of N.Y.*, No. 15–cv–1989, 2016 WL 3748499, at *4 (S.D.N.Y. Jul. 11, 2016); *Apostol v. City of N.Y.*, No. 11–cv–3851, 2014 WL 1271201, at *5 n.5 (E.D.N.Y. Mar. 26, 2014) (collecting cases). *But see Brown v. City of N.Y.*, No. 14–cv–5372, 2014 U.S. Dist. LEXIS 181736, at *1 (E.D.N.Y. Dec. 24, 2014) ("Because there was no trial, and because no jury could have seen any of the purportedly fabricated evidence, plaintiff cannot demonstrate that the allegedly fabricated evidence led to a deprivation of his rights."); *Anaba v. Cnty. of Suffolk*, No. 11–cv–1987, 2014 WL 1411770, at *10 (E.D.N.Y. Apr. 11, 2014) ("Plaintiff also alleges that he was denied his right to a fair trial. Both logic and law dictate that '[s]uch a claim must be dismissed [where] there was no trial.'"); *Alford v. City of N.Y.*, No. 11–cv–622, 2012 WL 3764429, at *4 (E.D.N.Y. Aug. 29, 2012) ("In a cause of action based on the denial of the right to a fair trial, the deprivation of liberty necessarily involves a conviction and a resulting sentence . . . By contrast, an action for malicious prosecution may lie in a case such as this where the trial was aborted before verdict by an order of dismissal after the prosecution rested, if the defendant suffered a post-arraignment deprivation of liberty based on fabricated testimony of a law enforcement officer that resulted in the filing of a criminal complaint."); *Walker v. City of N.Y.*, No. 14–cv–808, 2015 WL 4254026, at *5 (S.D.N.Y. Jul. 14, 2015) ("A § 1983 claim for denial of the right to a fair trial requires that a trial have actually been conducted." (citing *Fudge v. Phoenicia Times*, No. 09–cv–301, 2009 WL 2568576, at *2 (N.D.N.Y. Aug. 19, 2009))).

officer "creates information likely to influence a jury's decision *and forwards that information to prosecutors*," he becomes responsible for the "harm occasioned by such an unconscionable action." 124 F.3d at 130 (emphasis added). The Second Circuit explained that:

> No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice.

*Ricciuti*, 124 F.3d at 130.

As Judge Woods explained in *Garnett v. Undercover Officer C0039*, "[i]n *Ricciuti*, the phrase 'likely to influence a jury's decision' evidently describes the materiality of the information. It does not require that the falsified evidence be likely to be presented to a jury—again, the cause of action accrues when the information is presented to the *prosecutor*, not when it is presented to the jury." No. 13–cv–7083, 2015 WL 1539044, at *4 (S.D.N.Y. Apr. 6, 2015); *accord Nnodimele v. Derienzo*, No. 13–cv–34611, 2016 WL 337751, at *12 (E.D.N.Y. Jan. 27, 2016) (finding that defendants "misconstrue[d] language" from *Ricciuti* "as requiring a likelihood that the allegedly fabricated evidence actually influence a jury's decision, meaning that the criminal case must proceed to trial, and the manufactured evidence must reach the jury, and the manufactured evidence must influence the jury's decision").

Here, the conflicts and discrepancies in the evidence relating to the alleged discovery of drugs in Plaintiff's car create a genuine dispute of fact regarding whether Alexander and Cromwell manufactured evidence. Cromwell initially vouchered twenty-eight bags of marijuana and two bags of hashish as evidence for Plaintiff's arrest. (Speight Decl. Ex. K (Property Clerk Invoice).) Subsequently, however, Cromwell informed the DA's Office that a search of the car yielded twenty-six bags of marijuana and two bags of hashish. (Iwuh Decl. Ex. 8 (Complaint Room

Screening Sheet).)  Although Cromwell testified that the drugs were recovered when he searched the car *at the arrest scene*, and that nothing else was found when he later again searched the car at the precinct, he noted in the Complaint Room Screening Sheet that the drugs were found in the car's armrest *during the search* back *at the precinct.*  (*Compare* Cromwell Tr. at 37:12–18, *with* Iwuh Decl. Ex. 8 (Complaint Room Screening Sheet).)  Furthermore, Alexander testified that he saw the bags of marijuana Cromwell allegedly recovered from Plaintiff for the first time at the precinct.  (Pl. 56.1 ¶ 42; Alexander Tr. at 33:9–34:5; Cromwell Tr. at 32:15–33:24.)  Alexander also testified that the reason Plaintiff was directed to step out of his car was because Cromwell smelled marijuana, whereas Cromwell testified that the reason was that he saw marijuana on the armrest.  (Pl. 56.1 ¶ 45; Alexander Tr. at 28:18–29:25; Cromwell Tr. at 27:20–28:12.)  Even though Alexander helped Cromwell arrest and handcuff Plaintiff, according to Cromwell's testimony, at no point did the two officers discuss anything about the recovered drugs.  (Cromwell Tr. at 32:18–22; 33:16–20.)  Viewing the evidence in the light most favorable to the non-moving party and drawing all factual inferences in the non-moving party's favor, *Anderson*, 477 U.S. at 252, the Court finds that a reasonable jury could find that Cromwell and Alexander did not find drugs in the car before arresting Plaintiff, but nevertheless arrested him and then falsely reported to the DA's Office that drugs were recovered from the car.  Therefore, a genuine issue of material fact exists as to whether Alexander (and Cromwell) fabricated evidence against Plaintiff, and Plaintiff's fabrication of evidence claim against Alexander and Cromwell will proceed to trial.

### D.      Failure to Intervene

Defendants seek summary judgment on Plaintiff's failure to intervene against both Alexander and Cromwell with respect to the alleged false arrest, unlawful search, and malicious prosecution of Plaintiff, as well as the alleged denial of his right to a fair trial.

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  An officer who fails to intervene is liable if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Cook v. City of N.Y.*, No. 15–cv–6559, 2017 WL 1434493, at *11 (E.D.N.Y. Mar. 20, 2017) (citation and internal quotation marks omitted).

Regarding Alexander's and Cromwell's failure to intervene with respect to the alleged false arrest and malicious prosecution of Plaintiff, Defendants argue that Plaintiff has failed to adduce evidence that Defendants were aware that Plaintiff's arrest and prosecution lacked probable cause. However, as previously discussed, Plaintiff alleges that he was arrested for no valid reason and was subsequently prosecuted based on fabricated evidence.  The record evidence indicates that both officers were present at the time Plaintiff's car was pulled over and searched.  (Cromwell Tr. at 15:12–18, 18:7–14.)  Both officers were present when Plaintiff was handcuffed and arrested. (Alexander Tr. at 30:7–10.) The record also indicates that both Cromwell and Alexander took part in preparing police paperwork that was faxed to the DA's Office.  (Cromwell Tr. at 28:6–17; *see also* Pl. 56.1 ¶ 26.)  Thus, a reasonable jury, crediting Plaintiff's version of the facts, could find that there were no drugs in Plaintiff's car to justify his arrest, that the officers, indeed, took part in fabricating information, and that both officers knew that Plaintiff's constitutional rights were being violated when he was arrested and later prosecuted. *See Graham v. City of N.Y.*, 928 F. Supp. 2d 610, 622 (E.D.N.Y. 2013) (denying summary judgment noting that the two officer defendants were

partners and "present at the scene of the incident"). Thus, the Court denies summary judgment as to Plaintiff's failure to intervene claim based on false arrest and malicious prosecution.

With respect to Plaintiff's failure to intervene claim based on the alleged denial of his fair trial right, Defendants argue that Plaintiff has failed to adduce evidence that either Defendant was aware that fabricated evidence was forwarded to a prosecutor. The Court agrees as to Alexander, but not as to Cromwell. Although Alexander completed an arrest reports, there is no evidence that he was aware that the allegedly false report[s] by him or Cromwell were being transmitted to the DA's Office, such that he could have intervened. By contrast, Cromwell himself testified that the information contained in the criminal complaint was based on information he gave to the DA's Office. (Cromwell Tr. at 61:20–62:5.) As for Alexander, however, Plaintiff has not addressed this particular argument by Defendants, nor has he directed the Court to evidence supporting an inference that Alexander was aware of Cromwell's forwarding of false information to the DA's Office.[15] Thus, Defendants' summary judgment motion is granted as to Plaintiff's claim against Alexander that he failed to intervene with respect to the alleged denial of Plaintiff's right to a fair trial.

Defendants also put forth a more general argument that Plaintiff's failure to intervene claim should be dismissed in its entirety because Plaintiff is relying on a theory of direct participation as

_____

[15] While the Court recognizes that a jury might infer that, as a trained or experienced police officer, Alexander had to know that the allegedly false reports would be transmitted to the DA's Office, Plaintiff fails to point to any evidence establishing the foundation for such an inference, such as testimony from Alexander about his knowledge of the process for referring cases to the DA's Office for prosecution. *See Ariz. Premium Fin. Co. v. Employers Ins. of Wausau*, 586 F. App'x 713, 716 (2d Cir. 2014) ("While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000))).

to both Cromwell and Alexander. It is true that if both officers are found to be liable under a theory of direct participation by the jury at trial, they would not be liable for failing to intervene. *See Chepilko v. City of N.Y.*, No. 06–cv–5491, 2012 WL 398700, at *8 n.5 (E.D.N.Y. Feb. 6, 2012); *see also Anderson*, 17 F.3d at 557 ("[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by *other* law enforcement officers in their presence." (emphasis added)). At this juncture, however, the undisputed facts do not allow the Court to determine, as a matter of law, which officers should be liable as direct participants and which as non-intervenors. Because there are genuine issues of material fact as to the extent of each officer's participation in the alleged misconduct, Defendants are not entitled to summary judgment on Plaintiff's failure to intervene claim on this basis. *See Bryant v. Serebrenik*, No. 15–cv–3762, 2016 WL 6426372, at *8 (E.D.N.Y. Oct. 28, 2016).

In sum, Plaintiff's failure to intervene claim relating to the alleged false arrest, unlawful search, and malicious prosecution of Plaintiff will proceed against both Defendants, and Plaintiff's failure to intervene claim relating to the alleged denial of his right to a fair trial will proceed against Cromwell only. Plaintiff's failure to intervene claim against Alexander based on violation of his right to a fair trial is dismissed.

## CONCLUSION

The Court therefore grants Defendants' motion for judgment on the pleadings as to Plaintiff's municipal liability claim against the City and Defendants' partial motion for summary judgment only as to Plaintiff's failure to intervene claim against Alexander relating to the alleged violation of Plaintiff's right to a fair trial. However, Defendants' partial summary judgment motion is denied as to Plaintiff's (1) malicious prosecution claim against Alexander, (2) violation of the right to a fair trial against both Cromwell and Alexander, and (3) failure to intervene claim against Cromwell and Alexander with respect to the alleged false arrest, unlawful search, and

malicious prosecution of Plaintiff, and against Cromwell with respect to Alexander's alleged violation of Plaintiff's right to a fair trial.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: September 22, 2017
        Brooklyn, New York